IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER JAMES JOHNSON, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| COMMISSIONER OF | : | NO. 20-3111 |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Peter James Johnson ("Johnson" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying his claims for Child's Disability Insurance Benefits ("Child's DIB") pursuant to Title II of the Social Security Act and for Supplemental Security Income ("SSI") pursuant to Title XVI of the Act.[1] For the reasons that follow, Johnson's Request for Review will be denied.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Johnson was born on October 18, 1997. R. at 140.[2] He is able to communicate in English. Id. at 174. Johnson is a high school graduate, id. at 176, and is currently in his junior year at Columbia Southern University, an online university, id. at 32, where he maintains a 4.0 grade point average, id. at 33. He has no past relevant work experience. Id. at 20, 33, 175. Johnson protectively applied for both Child's DIB and SSI benefits on November 8, 2017, id. at 12, 140-53, alleging that he became disabled on June 28, 2016, id. at 12, 140, 147, due to

---

[1]   In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. See Doc. Nos. 3, 4.

[2]   Citations to the administrative record will be indicated by "R." followed by the page number.

ulcerative colitis, clostridium difficule ("C. diff"), fatigue, diarrhea, anemia, asthma, gastroesophageal reflux disease, seasonal allergies, anxiety, autoimmune disorder, rectal bleeding, and vitamin D deficiency, id. at 175.[3] His applications were initially denied on March 5, 2018. Id. at 12, 69-77. Johnson then filed a written request for a hearing on April 11, 2018, id. at 12, 80-94, and an Administrative Law Judge ("ALJ") held a hearing on his claims on April 9, 2019, id. at 26-48. On May 3, 2019, the ALJ issued an opinion denying Johnson's disability claims. Id. at 9-25. Johnson filed an appeal with the Appeals Council, which the Appeals Council denied on May 4, 2020, thereby affirming the decision of the ALJ as the final decision of the Commissioner. Id. at 1-6. Johnson then commenced this action in federal court.

## II. THE ALJ'S DECISION

In his decision, the ALJ found that Johnson had not engaged in substantial gainful activity since June 28, 2016, the alleged onset date. Id. at 14. The ALJ determined that Johnson suffered from the severe impairments of ulcerative colitis, C. diff, depressive disorder, and anxiety disorder. Id. The ALJ concluded that neither Johnson's individual impairments, nor the combination of his impairments, met or medically equaled a listed impairment. Id. at 15. The ALJ found that, during the relevant period, Johnson had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to work involving simple, routine tasks with no more than occasional changes in work setting. The claimant is limited to no interaction with the public and occasional interaction with supervisors or coworkers.

---

[3]  A claimant may be eligible for Child's DIB if he or she is 18 years old or older and has a disability that began before he or she turned 22 years old. 20 C.F.R. § 404.350(a)(5). Here, Johnson was eligible for Child's DIB. He was 18 years old on the date of alleged onset of disability and 20 years old when he applied for Child's DIB. See R. at 14, 140.

2

Id. at 17.  Based on this RFC determination, and relying on the vocational expert ("VE") who appeared at the hearing, the ALJ found that that there were jobs that existed in significant numbers in the national economy that Johnson could perform, such as: (1) Assembler, Small Products II; (2) Office Helper; or (3) Stuffer.  Id. at 21.  Accordingly, the ALJ concluded that Johnson was not disabled.  Id. at 22.

### III.     JOHNSON'S REQUEST FOR REVIEW

In his Request for Review, Johnson contends that remand is required because the ALJ erred by: (1) failing to incorporate limitations related to his gastrointestinal impairments into his RFC, despite finding them to be severe impairments; and (2) failing to develop the medical record, notwithstanding acknowledging that the record contained no medical opinions.

### IV.    SOCIAL SECURITY STANDARD OF REVIEW

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence."  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  The court's "scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's finding of fact."  Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review.  See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  "Substantial evidence 'does not mean a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (citation omitted). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 1382c(a)(3)(A); accord id. § 423(d)(1). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) (references to other regulations omitted); accord id. §§ 416.920(a)(4)(i)-(v).

4

## V.     DISCUSSION

### A.     Substantial Evidence Supports the ALJ's RFC Determination

Johnson alleges that the ALJ failed to adequately incorporate his gastrointestinal limitations into his RFC determination, despite finding them to be severe impairments. Pl.'s Br. (Doc. No. 16) at 2-7; Pl.'s Reply Br. (Doc. No. 18) at 1-3. This contention lacks merit.

It is an ALJ's responsibility to determine a claimant's RFC. 20 C.F.R. §§ 404.1546, 416.946. An individual's RFC refers to the most a claimant can still do despite his or her limitations. Id. §§ 404.1545(a), 416.945(a). The assessment must be based upon all the relevant evidence, including medical records, medical source opinions, and the individual's subjective allegations and descriptions of his or her own limitations. Id. §§ 404.1545(a)(3), 416.945(a)(3). It must also consider all of a claimant's medically determinable impairments, including impairments that are not severe. Id. Ultimately, an ALJ must convey a claimant's "credibly established limitations" in his or her RFC assessment. Rutherford, 399 F.3d at 554.

The issue for this Court on review is not how it would weigh the evidence de novo, but only whether the evidence is such "as a reasonable mind might accept as adequate to support [the] conclusion" that the ALJ reached. Hartranft, 181 F.3d at 360. An ALJ is required to provide "a clear and satisfactory explication of the basis on which [he or she] rests" a decision. Cotter v. Harris, 642 F.2d 700, 704-05 (3d Cir. 1981). However, courts have a "responsibility to 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 305 (3d Cir. 2013) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). A reviewing court must be able to determine the basis for the decision. Teeters v. Colvin, No. 14-252, 2015 WL 1811264, at *2

5

(W.D. Pa. Apr. 21, 2015) (explanation is sufficient if reviewing court can determine the basis for the decision) (citing Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001)).  An ALJ's decision is sufficient if it enables the reviewing court to conduct a "meaningful review."  Jones, 364 F.3d at 505.  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the Cotter doctrine is not implicated."  Hernandez v. Comm'r of Soc. Sec., 89 F. App'x. 771, 774 (3d Cir. 2004).

Here, at step two of the sequential analysis, the ALJ identified ulcerative colitis and C. diff as severe impairments.  R. at 14.  In determining that Johnson's ulcerative colitis did not meet or medically equal Listing 5.06, the ALJ found that:

> The medical records do not document obstruction of stenotic areas in the small intestines requiring hospitalization on at least two occasions at least sixty-days apart within a consecutive six-month [period].  The medical records also do not reveal two of the following occurring [in a] six-month period despite treatment: anemia with hemoglobin of less than 10.0g/dL on two days at least sixty days apart, serum albumin of 3.0g/dL or less present on two days at least sixty days apart; clinically documented abdominal mass tenderness with pain or cramping not controlled on narcotic medication on two days at least sixty days apart; perineal disease with a draining abscess with pain not controlled on narcotic medication on two days at least sixty days apart; involuntary weight loss of at least ten percent on two days at least sixty days apart; or need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.  As noted in more detail below, [Johnson] experiences a few ulcerative gastritis flares each year with the latest being July 2018.  Other than hospitalization following the initial diagnosis, he has not required additional hospitalization.  The flares appear to have responded to routine and conservative care as noted by the treating providers.

Id.  Then, after a thorough review of the record, the ALJ concluded that Johnson had the RFC "to

perform light work[4] as defined in 20 CFR § 404.1567(b) and 416.967(b) except . . . limited to work involving simple, routine tasks with no more than occasional changes in work setting. . . . [and] limited to no interaction with the public and occasional interaction with supervisors or coworkers." R. at 17. In assessing Johnson's RFC, the ALJ determined that:

> While the record is sufficient to establish [Johnson's] medically determinable impairments, the medical evidence of record does not support the degree of symptoms—abdominal pain, cramping, weakness, nausea, fever, diarrhea, rectal bleeding, loss of appetite, fatigue, depressed mood, decreased energy, lack of motivation, sleep disturbance, anxiousness, and irritability and anger towards others—and resulting functional limitations alleged by [Johnson]. The treatment has been essentially routine and conservative with no significant objective findings documented by the treating providers to support the frequency, duration, and intensity of the flares to colitis or C. diff. Further, [Johnson] has admitted the capacity to engage in certain activities, such as attending college online and maintaining a 4.0 grade point average, that are suggestive of a greater functional capacity than alleged rendering the claimant's allegations of debilitating limitations less persuasive. [Johnson's] credibly established functional limitations secondary to the medically determinable impairments are accommodated in the above [RFC] assessment through the limitation to light work. Due to concentration, persistence, and pace deficits from abdominal pain, fatigue, depressed mood, anxiousness, and potential side effects of medication, . . . [Johnson] is limited to work involving simple, routine tasks with no more than occasional changes in work setting. Because of [Johnson's] reported anger, the undersigned limits him to no interaction with the public and occasional interaction with supervisors or coworkers. There is no credible indication in the record as a whole that [Johnson] is more limited than found in the [RFC].

Id. at 20.

---

4   Light work is defined as involving:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. §§ 404.1567(b), 416.967(b).

In this case, the ALJ began his RFC assessment by summarizing Johnson's subjective statements and testimony regarding his limitations and symptoms. Id. at 17-18. As the ALJ noted, Johnson "alleges that he cannot work due to recurrent flares of ulcerative colitis and C. diff that result in fatigue, frequency of need to use the restroom, and malaise in which [Johnson] would be absent from work and would be off task with such frequency as to prevent employment on a regular and continuing basis." Id. During these flares, Johnson reported that he spent most of the day in bed due to sharp abdominal pain, nausea, and fatigue. Id. at 18. He also had "diarrhea with blood during the flares, which result[ed] in using the restroom up to ten times per day" and stated that his flares with diarrhea lasted several weeks. Id. As a result, he experienced unintended weight loss, depressed mood, anxiousness, missed his college classes, and, at one point, was forced to withdraw from school. Id.

The ALJ then continued his RFC assessment by conducting a comprehensive longitudinal review of the medical record, one that contained a careful and thorough discussion of Johnson's gastrointestinal impairments. Id. at 15, 18-20. The ALJ summarized Johnson's symptoms and treatment leading up to his ulcerative colitis diagnosis in May 2016. See id. at 18; see also id. at 350-82. The ALJ also reviewed medical records relating to Johnson's subsequent ulcerative colitis and C. diff flare-ups, id. at 18-19, from December 2016 through January 2017, id. at 313-22, in June 2017, id. at 266-78, and from June 2018 through July 2018, id. at 594-95. Based on this evaluation, the ALJ concluded that "[t]he medical records revealed a few episodes of diarrhea and abdominal pain from ulcerative colitis each year that were treated routinely and conservatively with prednisone tapers." Id. at 19; see also id. at 334 (October 21, 2016: "[H]ospitalized in [M]ay of 2016 for bloody diarrhea. He was started on a prednisone taper . . . [h]e finished his prednisone taper 4-6 weeks ago without return of symptoms until last night

8

when he had a well formed bowel movement with blood on the outside of the stool. . . . He is otherwise asymptomatic from a GI standpoint."); id. at 322 (December 28, 2016: "Instructed since S/S have improved should continue to hold Prednisone and just [f]ollow up as scheduled in January."); id. at 319 (January 9, 2017: "Recent flaring symptoms which ultimately did not require another course of prednisone."); id. at 595 (June 19, 2018: "He was started on 40mg of prednisone and slowly tapered. With that his symptoms improved but when he started 10mg of prednisone his symptoms started to return. Currently he is having 4 loose stools a day with blood and no abdominal pain. No fever or chills. No nausea or vomiting"); id. at 594 (July 23, 2018: "He is currently on a prednisone taper. He is on 30 mg prednisone daily. He is decreasing prednisone by 5 mg on a weekly basis. . . . He is currently having 3 semi-formed bowel movements daily. He has very little bleeding"). The medical records also show that Johnson was responsive to his medications during his C. diff flare-ups. Id. at 18-19; see also id. at 309 (February 7, 2017: "[S]witched to vancomycin oral 125 mg four times daily. Has slowly improved on the vancomycin."); id. at 264 (June 29, 2017: "The patient was started on Flagyl IV on admission, then started on Uceris with significant improvement of his abdominal pain and diarrhea."); id. at 286 (July 10, 2017: "Empirically restarted on dificid to taper slowly after 2 weeks. . . . He continues to feel better without fever but has night sweats, occasional nausea, loose non[-]bloody stools but overall much improved."). The ALJ noted that, "[w]hile [Johnson] visited the emergency department during some of the flares, he had one hospitalization following a recurrence of C. diff." Id. at 19; see also id. at 315-17 (documenting January 25, 2017 emergent visit with no hospitalization); id. at 263-64 (documenting June 26, 2017 emergent visit with hospitalization from June 26, 2017 through June 29, 2017).

Concurrent with his review of Johnson's ulcerative colitis and C. diff flare-ups, the ALJ summarized the medical records during the periods between flare-ups. See id. at 18-19. Specifically, the ALJ reviewed Johnson's treatment notes from his gastroenterology specialist and primary provider, which indicated that his ulcerative colitis was stable on daily medications. Id. at 19; see e.g., id. at 348 (July 13, 2016: "symptomatically improved on Lialda and a prednisone taper"); id. at 335 (October 21, 2016: "so far has done fairly well on oral and rectal mesalamine"); id. at 329 (November 4, 2016: "on [L]ialda and [R]owasa[,] which has helped improve his bowels. Maximum of 3 BM in a day"); id. at 321 (January 5, 2017: "so far has done fairly well on oral and rectal mesalamine"); id. at 276 (June 15, 2017: "Maintained on lialda and rowasa. Previously controlled—Now with Cdiff"); id. at 523 (December 17, 2017: Johnson's ulcerative colitis was "[i]mproved and stable"); id. at 519 (January 12, 2018: "[h]e has been stable on Lialda 4 tablets per day and Rowasa enemas at bedtime"); id. at 559 (September 18, 2018: "Recently started on mercaptopurine which has helped control symptoms of ulcerative colitis"); id. at 593 (December 14, 2018: Johnson reported that "[h]e [was] stable on Rowasa enemas daily, mesalamine daily, and Imuran 50mg a day" and "he is doing well clinically"). Johnson's treatment notes also documented a generally stable weight, with fluctuations occurring around his flare-ups. Id. at 19; see e.g., id. at 358 (May 27, 2016: 204 pounds); id. at 352 (May 31, 2016: 204 pounds); id. at 347 (July 13, 2016: 196 pounds); id. at 345 (July 18, 2016: 195 pounds); id. at 342 (August 24, 2016: 200 pounds); id. at 337 (September 13, 2016: 199 pounds); id. at 335 (October 21, 2016: 202 pounds); id. at 332 (October 28, 2016: 204 pounds); id. at 331 (November 4, 2016: 204 pounds); id. at 326 (December 5, 2016: 205 pounds); id. at 320 (January 5, 2017: 210 pounds); id. at 310 (February 7, 2017: 193 pounds); id. at 307 (April 21, 2017: 198 pounds); id. at 275 (June 15, 2017: 196 pounds); id. at 303 (June 30, 2017: 189 pounds); id. at

299 (July 5, 2017: 188 pounds); id. at 288 (July 10, 2017: 188 pounds); id. at 295 (July 28, 2017: 190 pounds); id. at 521 (December 7, 2017: 204 pounds); id. at 520 (January 12, 2018: 200 pounds); id. at 534 (January 26, 2018: 201 pounds); id. at 595 (June 19, 2018: 206 pounds); id. at 594 (July 23, 2018: 211 pounds); id. at 560 (September 18, 2018: 217 pounds); id. at 571 (October 17, 2018: 217 pounds); id. at 582 (October 30, 2018: 218 pounds); id. at 593 (December 14, 2018: 220 pounds).

As the ALJ noted, these same treatment notes further indicated that Johnson often "denied diarrhea and abdominal pain at the examinations." Id. at 19; see e.g., id. at 349 (June 8, 2016: "Pt has not had bloody diarrhea since hospital" and "[n]egative for abdominal pain, constipation, diarrhea and vomiting"); id. at 346 (July 13, 2016: "He tells me that he is doing remarkably better" and "denies abdominal pain, nausea, vomiting, diarrhea, bloody bowel movements, urgency or tenesmus"); id. at 342 (August 24, 2016: "denies abdominal pain, diarrhea, urgency, or tenesmus" as well as "fever, chills, night sweats, or weight loss"); id. at 334 (October 21, 2016: "Today he feels well and [n]egative for abdominal pain, blood in stool, constipation, diarrhea, heartburn, melena, nausea and vomiting"); id. at 329 (November 4, 2016: "Negative for abdominal pain, constipation, melena and vomiting"); id. at 324 (December 5, 2016: "Negative for abdominal pain"); id. at 320 (January 5, 2017: "No abdominal pain and diarrhea and urgency no nocturnal bowel movements"); id. at 307 (April 21, 2017: "Stomach pain, nausea or vomiting about 2 weeks ago which resolved spontaneously"); id. at 288 (July 10, 2017: "Positive for diarrhea and nausea. Negative for abdominal distension, abdominal pain, blood in stool, constipation and vomiting"); id. at 295 (July 28, 2017: "Negative for abdominal pain, nausea and vomiting"); id. at 522 (December 7, 2017: "Negative for abdominal pain, blood in stool, constipation, melena and vomiting"); id. at 535 (January 26, 2018: "No diarrhea, nausea

11

or vomiting"); id. at 595 (June 19, 2018: "Currently he is having 4 loose stools a day with blood and no abdominal pain. . . . No nausea or vomiting"); id. at 559 (September 18, 2018: "No abdominal pain or diarrhea"); id. at 593 (December 14, 2018: "He denies bleeding or diarrhea"). Moreover, Johnson's treating providers frequently documented normal physical examinations of his abdomen. See e.g. id. at 295, 303, 310, 316, 331, 335, 337, 343, 347, 350, 383, 520, 522, 535, 550, 560, 571, 582, 593, 595, 598 (noting soft abdomen); id. at 298, 343, 347 (abdomen had normal appearance); id. at 310, 316, 335, 337, 343, 347, 350, 383, 520, 571, 593 (normal bowel sounds); id. at 295, 303, 310, 316, 331, 335, 343, 347, 383, 520, 522, 571, 593, 595 (no abdominal distension); id. at 295, 303, 310, 316, 331, 335, 337, 350, 522 (no abdominal masses); id. at 295, 331, 335, 337, 343, 347, 350, 383, 520, 522, 535, 550, 560, 571, 582, 593, 595, 598 (no abdominal tenderness). The ALJ's review of Johnson's medical records led him to conclude that they "were not consistent [with] [Johnson's] reporting that he remained in bed for extended periods, including during the C. diff recurrences or ulcerative colitis flares." Id. at 19.

In addition to the medical records pertaining to gastrointestinal impairments, the ALJ considered Johnson's outpatient therapy progress notes from WellSpan Philhaven, activities of daily living, and school performance in formulating his RFC. See id. at 15, 19-20. With respect to Johnson's outpatient therapy, the ALJ noted that the records referenced "increased anxiety when taking Euceris during ulcerative colitis" and "increased depression following his mother's hospitalization." Id. at 19. These records also documented anxiety and anger related to familial and school problems, including Johnson's need for perfection in his schoolwork. Id. at 19-20; see also id. at 220-62, 619-69. Based upon a review of these records, the ALJ concluded that, "[f]or these symptoms of anxiety and depression, [Johnson] underwent routine and conservative care that consisted of medication management from the primary care provider and outpatient

12

therapy." Id. at 19.  Further, there was no indication that Johnson "require[d] more intensive or extensive mental health treatment." Id. at 20.  In fact, as the ALJ explained, Johnson's anger improved after "[t]he treating psychologist provided [him] with strategies to express anger appropriately" and that he was able to successfully resolve problems with his college professors on his own.  Id. at 20, 628, 630, 646.  The ALJ also noted that Johnson's school-related anxiousness improved once he selected a major and decided to write a book.  Id. at 20, 632, 648.

With respect to Johnson's activities of daily living and school performance, the ALJ found that, despite his ulcerative colitis flare-ups, Johnson "has been able to maintain a 4.0 grade point average while attending college online with occasional accommodations for extra time to complete work."  Id. at 15; see also id. at 32-33.  The ALJ further noted that Johnson was able to perform activities of daily living, including providing for his own personal care, handling money, shopping in stores, reading, and watching movies.  Id. at 15; see also id. at 198-99, 626, 667.  Johnson was also able to travel outside the home alone, attend church services and youth group activities, and socialize with others.  Id. at 15-16; see also id. at 43, 198-99, 626, 667.  Accordingly, as the foregoing demonstrates, the ALJ provided a clear and satisfactory explanation of his RFC determination which was supported by substantial evidence.

Johnson also claims that the ALJ's RFC assessment did not account for all of his work-related impairments.  These work-related limitations include: (1) the requirement that he take a significant number of unscheduled breaks throughout the day to use a readily accessible bathroom; (2) his need to be absent from work for significant periods of time during an ulcerative colitis flare-up; (3) his limited ability to concentrate, focus, or complete tasks due to abdominal pain, back pain, and fatigue; and (4) forced absences from work during periods when he was C. diff positive and contagious.  Pl.'s Br. at 5-7.  Here, to the extent that the ALJ's RFC

13

assessment differed from Johnson's subjective statements about his symptoms and limitations, the ALJ adequately discussed his reasoning for not including them in Johnson's RFC. Although the ALJ found that Johnson's "medically determinable impairments *could* reasonably be expected to cause the alleged symptoms," he did not credit them because his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." R. at 18 (emphasis added). Substantial evidence supports this determination because, as the ALJ noted and as discussed supra, "[w]hile [Johnson] has flares of abdominal pain with accompanying diarrhea from ulcerative colitis or C. diff, the medical records do not support the frequency, duration, or intensity of the flares." Id. It was Johnson's burden to produce evidence regarding his gastrointestinal impairments and "[a] lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC." Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 148 (3d Cir. 2007); Roberts v. Colvin, No. 14-04847, 2016 WL 5720609, at *7 (E.D. Pa. Sept. 30, 2016). Consequently, the ALJ's decision not to adopt all of Johnson's subjective limitations in his RFC determination is supported by substantial evidence in the record and entitled to judicial deference. Zaccaria v. Comm'r of Soc. Sec., 267 F. App'x 159, 161 (3d Cir. 2008); Williams v. Barnhart, 87 F. App'x 240, 242 (3d Cir. 2004).

B. **The ALJ Properly Developed the Medical Record**

Johnson maintains that the ALJ erred by failing to properly develop the medical record, despite acknowledging the absence of any medical opinion. Pl.'s Br. at 8-9; Pl.'s Reply Br. at 3-4. In support of this contention, Johnson points to the ALJ's statement that "the record does not contain a medical opinion as to the claimant's work-related functioning." Pl.'s Br. at 8 (quoting R. at 20); see also Pl.'s Reply Br. at 3. Johnson also alleges that, in failing to fulfill his duty to

develop the administrative record, the ALJ relied on his own lay judgment.[5] Pl.'s Br. at 8; Pl.'s Reply Br. at 3-4. This claim lacks substance.

Given the non-adversarial nature of Social Security proceedings, an ALJ has "a duty to develop a full and fair record" by attempting to secure all of the information relevant to deciding the claimant's claim. Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (citations omitted). With respect to the medical record, the ALJ must "develop [a claimant's] complete medical history for at least the 12 months preceding the month in which [he or she] file[d] [his or her] application." 20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1). A "[c]omplete medical history means

---

[5] Johnson's reliance on Doak, 790 F.2d 26, for the proposition that an "ALJ's RFC finding cannot be based on lay speculation and must be supported by legitimate, relevant medical opinion evidence," Pl.'s Reply Br. at 2, is misplaced. As explained by this Court in Cleinow v. Berryhill, 311 F. Supp. 3d 683 (E.D. Pa. 2018):

> Doak does not stand for the proposition that an ALJ cannot make an RFC determination in the absence of a medical opinion reaching the same conclusion. Such a rule would be inconsistent [with] the Third Circuit's express holding that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Rather, the Court in Doak held that the ALJ's opinion was unsupported because nothing in the record, which consisted of testimony and three medical reports, justified the ALJ's conclusion. Contrary to Plaintiff's contention, the more recent, nonprecedential Third Circuit and district court opinions . . . clarify, rather than contradict, Doak's holding, and make clear that an ALJ is not restricted to adopting the conclusions of a medical opinion in making an RFC determination.

Id. at 685 (footnotes omitted) (citations omitted) (approving and adopting the Report and Recommendation of the undersigned); see also Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties."); Cummings v. Colvin, 129 F. Supp. 3d 209, 215 (W.D. Pa. 2015) ("Doak 'does not, as Plaintiff suggests, hold that an ALJ's RFC findings must be based on a particular medical opinion.'" (quoting Doty v. Colvin, No. 13-80-J, 2014 WL 29036, at *1 n.1 (W.D. Pa. Jan. 2, 2014))); Callahan v. Colvin, No. 13-1634, 2014 WL 7408700, at * n.1 (W.D. Pa. Dec. 30, 2014) ("The Third Circuit [in Doak] did nothing more than make a substantial evidence finding in light of a limited record and did not purport to create a rule that an RFC determination must be based on a specific medical opinion.").

the records of [a claimant's] medical source(s) covering at least the 12 months preceding the month in which [the claimant] file[s] [his or her] application." Id. §§ 404.1512(b)(1)(ii), 416.912(b)(1)(ii). Here, Johnson filed his application for Child's DIB and SSI benefits on November 8, 2017, R. at 12, and the ALJ evaluated medical records dating from May 2016 through December 2018, a period covering more than two and one-half years, id. at 17-20. These records meet the standard for a "complete medical history" as defined in 20 C.F.R. § 404.1512(d). At the administrative hearing, moreover, the ALJ afforded Johnson the opportunity to testify at length regarding his gastrointestinal impairments, R. at 33-46, questioned the VE, id. at 46-48, and discussed the medical evidence, reports, and testimony in detail in rendering his disability decision, id. at 12-22. See Glenn v. Comm'r of Soc. Sec., 67 F. App'x. 715, 719 (3d Cir. 2003). Thus, there is no indication that the record lacked sufficient evidence for the ALJ to make a well-informed decision as to whether Johnson was disabled.

Johnson's challenge to the ALJ's development of the medical record is further weakened by the fact that he was represented by counsel at the administrative hearing. R. at 27. "Because [he] was represented by counsel at the administrative hearing, the ALJ had no enhanced duty to develop the administrative record." Wert v. Comm'r of Soc. Sec., No. 13-5705, 2015 WL 1808594, at *13 (E.D. Pa. Apr. 21, 2015) (citing Turby v. Barnhart, 54 F. App'x 118, 122 (3d Cir. 2002)); see also Jones v. Saul, No. 20-318, 2020 WL 4903789, at *5 n.5 (E.D. Pa. Aug. 20, 2020) (citing Myers v. Berryhill, 373 F. Supp. 528, 539 (M.D. Pa. 2019) (noting that the ALJ "is not required to search out relevant evidence which might be available, since that would in effect shift the burden of proof to the government")). Instead, Johnson's "counsel was responsible for ensuring that the ALJ was aware of any facts favorable to [Johnson's] claim for benefits." Turby, 54 F. App'x at 122-23 (citing 20 C.F.R. § 404.1740(b)(a)). In turn, the ALJ was entitled

16

to assume that Johnson's counsel made the strongest case for benefits. See, e.g., Yoder v. Colvin, No. 13-107, 2014 WL 2770045, at *3 (W.D. Pa. June 18, 2014). Here, at the administrative hearing, Johnson and his counsel never requested that the record be kept open and supplemented. R. at 27-48. Nor did they ask the ALJ to request an updated State agency opinion, seek testimony from a medical expert ("ME"), or order a consultative examination. Id. Instead, Johnson's counsel represented to the ALJ that there was no objection to the relevance of the documents contained in the administrative record and that the administrative record was complete. Id. at 30. Under these circumstances, the ALJ was permitted to assume that the administrative record was complete and that Johnson's counsel had made the strongest case for benefits on his behalf.

According to Johnson, however, the ALJ did not fulfil his duty to develop a full and fair record because there was no medical opinion as to his work-related functioning. Pl.'s Br. at 8-9; Pl.'s Reply Br. at 3-4. He posits that the ALJ should have: (1) requested an updated opinion from the State agency physician; (2) sought ME testimony; and/or (3) ordered a consultative examination with an internal medicine or gastroenterology specialist. Pl.'s Br. at 8; Pl.'s Reply Br. at 3-4. As the following analysis demonstrates, "the regulations do not require [an ALJ] to seek outside expert assistance," and the ALJ's decision whether to do so is discretionary. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011).

Johnson first suggests that the ALJ should have requested an updated opinion from the State agency physician. Pl.'s Br. at 8-9. On March 2, 2018, the State agency physician issued her Disability Determination Explanation, opining that Johnson's gastrointestinal impairments

were not severe.[6] R. at 54. Because the State agency physician only reviewed the record through March 2018, however, Johnson argues that the ALJ should have requested an updated opinion. Pl.'s Br. at 8-9. He relies on SSR 96-6p, 1996 WL 374180 (July 2, 1996), which states, in relevant part, that only where "additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required. Id. (emphasis added). "'[T]he plain language' of SSR 96–6p makes it clear[] that it is 'entirely up to the ALJ to determine whether . . . [this] circumstance[] is present.'" Wilson v. Colvin, 218 F. Supp. 3d 439, 450 n.12 (E.D. Pa. 2016) (quoting Walker v. Colvin, No. 15-00900, 2016 WL 491724, at *4 (W.D. Pa. Feb. 9, 2016)). The ALJ made no such finding in this case. See R. at 14-22. It was well within the ALJ's discretion not to seek an updated State agency opinion, particularly where he did not rely on the existing opinion in reaching his disability decision. Indeed, the ALJ did "not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions," id. at 20, instead concluding that Johnson's gastrointestinal impairments were severe, id. at 14. Moreover, additional medical records indicate that Johnson's condition did not deteriorate after March 2018. Rather, aside from his most recent ulcerative colitis flare-up in July 2018, id. at 15, 594-95, the medical records from September 2018, October 2018, and December 2018 indicate that Johnson was doing well clinically, was stable on his medications, and was not experiencing abdominal pain, rectal bleeding, or diarrhea, see id. at 554-85, 593. Consequently, the ALJ's decision not to seek an updated opinion from the State agency physician was not in error.

---

[6] The State agency physician's opinion was based on a December 7, 2017 primary care visit for anemia, a January 12, 2018 gastrointestinal visit for ulcerative colitis, and a January 26, 2018 primary care visit for a cough. R. at 53-54.

Johnson next contends that the ALJ should have sought ME testimony. Pl.'s Br. at 8-9. In support thereof, Johnson cites to the Agency's Hearings, Appeals, and Litigation Law Manual (HALLEX) I-2-5-32, which states that: "MEs provide opinions by either testifying at a hearing or responding to written interrogatories. An [ALJ] *may* use an ME before, during, or after a hearing. The need for ME opinion evidence is generally left to the ALJ's discretion."[7] HALLEX I-2-5-32, 1994 WL 637369 (last updated Aug. 29, 2014) (emphasis added). "The primary reason an ALJ will request an ME opinion is to help the ALJ evaluate the medical evidence in a case." Id. Examples of situations in which the ALJ may request an ME opinion are set forth in HALLEX I-2-5-34. See HALLEX I-2-5-34, 1994 WL 637370. Given the ALJ's thorough discussion of the record evidence, discussed supra in Section V(A), it was well within the ALJ's discretion whether to seek an ME opinion. Here, in exercising that discretion, the ALJ did not err in not requesting one.

Finally, Johnson suggests that the ALJ should have ordered a consultative examination with an internal medicine or gastroenterology specialist. Pl.'s Br. at 8-9. "The decision to order a consultative examination is within the sound discretion of the ALJ." Thompson v. Halter, 45 F. App'x 146, 149 (3d Cir. 2002) (citations omitted). Pursuant to the applicable regulations, an ALJ "*may* decide to purchase a consultative examination. . . . to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow . . . a determination or decision [to be made on the] claim." 20 C.F.R. §§ 404.1519a(a)-(b), 416.919a(a)-(b) (emphasis added). In addition, an ALJ may order a consultative examination if "additional evidence needed is not contained in the records of your medical sources" or "[t]here is an indication of a change in

---

[7] HALLEX I-2-5-34 identifies the three circumstances in which an ALJ must obtain an ME opinion, none of which are applicable here. See HALLEX I-2-5-34, 1994 WL 637370 (last updated Jan. 21, 2020).

19

[the claimant's] condition that is likely to affect [his or her] ability to work, but the current severity of [the claimant's] impairment is not established." Id. §§ 404.1519a(b)(1), (4), 416.919a(b)(1), (4). Before ordering a consultative examination, the ALJ must "consider not only existing medical reports, but also the disability interview form containing [the claimant's] allegations as well as other pertinent evidence in [the claimant's] file." Id. §§ 404.1519a(a), 416.919a(a). Ultimately, although an ALJ has a duty to develop the record, that duty "does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." Basil v. Colvin, No. 12-315E, 2014 WL 896629, at *2 (W.D. Pa. Mar. 6, 2014); see also Jefferson v. Colvin, No. 16-2665, 2017 WL 2199064, at *2 (E.D. Pa. May 18, 2017). As discussed supra in Section V(A), the ALJ thoroughly considered the evidence of record which was sufficient to support the ALJ's RFC determination and thus, there was no need for the ALJ to order a consultative examination. See R. at 15-20. Accordingly, a consultative examination was not necessary under the Social Security regulations for the ALJ to render a disability decision in this case.

## VI. CONCLUSION

For the reasons set forth above, this Court finds that the ALJ's decision is supported by substantial evidence. Therefore, Plaintiff's Request for Review will be denied. An appropriate order follows.

Dated: June 29, 2021

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE
